## WILLIAM H. VIRGIE *vs.* SARAH A. STETSON.

### Lincoln. Opinion November 21, 1885.

*Levy. Married woman. R. S., 1871, c. 61, § 1.*

A levy upon the land of a debtor is not void, because it embraces other land not belonging to the debtor.

The statute prohibiting conveyances by the wife, without the joinder of her husband, of such real estate as has been directly or indirectly conveyed to her by her husband, does not include transfers by attachment and levy for the satisfaction of her debts. Such real estate is liable to attachment and levy by her creditors.

ON EXCEPTIONS.

Writ of entry to recover possession of certain parcels of land in Damariscotta levied upon by the plaintiff as the property of the defendant.

At the trial the defendant's counsel asked that the following instructions be given to the jury :

" 1. That the levy is informal and void.

" 2. That it is void for the reason that it embraces land other than land of the defendant, which other land was appraised with land of the debtor, if the jury believe from the evidence that other land is embraced in the levy and appraised.

" 3. That if the jury believe from the evidence that the title to any part of the premises demanded was derived from defendant's husband during coverture, the levy is void as to so much of the premises.'

The requested instructions were not given, and the defendant alleged exceptions.

*A. P. Gould* and *J. E. Moore*, for the plaintiff, cited : *Foss* v. *Stickney*, 5 Maine, 390 ; *Grover* v. *Howard*, 31 Maine, 546 ; *Rice* v. *Cook*, 75 Maine, 45 ; *Ware* v. *Pike*, 12 Maine, 303 ; *Greene* v. *Hatch*, 12 Mass. 195 ; *French* v. *Holmes*, 67 Maine, 186 ; *Call* v. *Perkins*, 65 Maine, 439 ; 2 Kent's Com. *152, *130, *131 ; *Moore* v. *Richardson*, 37 Maine, 438 ; *Fox* v. *Hatch*, 14 Vt. 340 ; Schouler, Domestic Relations, § 158 ; *Willard* v. *Eastham*, 15 Gray, 328.

*W. Gilbert*, for the defendant.

The statute denies to the wife the power to convey an estate derived from the husband without his joinder. A levy is a statutory conveyance, so held by all elementary writers and jurists. That process or means by which a title passes from one to the other is called a conveyance, the same as the transportation of a person or a commodity is called a conveyance. And it is none the less a conveyance because it is done by force of law ; as a conveyance through the instrumentality of a deed is made only by the force of the law. Law, alone, gives it validity.

And although the conveyance by levy may be *in invitum*, it is none the less a conveyance of the holder of the title. No other can convey. The debtor voluntarily puts in motion the force which results in a conveyance by levy, and thereby causes the conveyance, to be made — in other words, upon familiar principles, makes it herself. The final act may be compulsory, but the initial motion which compelled it was voluntary. And *qui*

*facit per alium, facit per se.* The law is the vital force, the officer and other chosen agents of the law are the instrumentalities through which it acts, and the original voluntary act of the debtor is the moving cause. This moving cause therefore has its origin in the will of the debtor, which operates to convey.

So we say that the statutory conveyance by levy is the conveyance of the debtor. We are not at liberty to suppose that the legislature made a law, framed to defeat its own purpose, a statute containing in itself the seeds of its own destruction. But unless we hold that the denial of the power to convey without the joinder of the husband applies to conveyances by levy, as well as by deed, the wife has the power to defeat the operation of the statute at will. All she need to do is to give her note payable on demand for the amount of the purchase money and suffer judgment on the note; thereupon execution issues, levy is made, the title passes, the purchaser has his estate, the recusant wife has her money, and the wronged husband finds his home—the fruits of his anxious toils—which he had in the days of his prosperity and of mutual confidence provided as a harbor of refuge for himself and wife from the storms of life, ruthlessly taken from under his feet — the loved roof tree which the legislature had intended to protect taken from over his head.

The statute was made to protect the husband in cases of disagreement. So long as the husband and wife are in harmony the statute is needless.

Counsel reviewed the legislation of this state affecting the rights of married women and contended that this review disclosed the intention of the legislature. It had two objects. One of them is to secure the wife in case she survives the husband, not according to the old practice making her an underling in her own house, which her thrift and frugality have helped to purchase, and turning her off with the poorest cow, a feather bed, six cups and saucers, a snuff-box, mustard pot and sauce pan. The other object is, in the days of vigor and prosperity to provide a port of refuge from the storms of fate, where in the years of decline and in the vicissitudes of life the weary and wayworn heart may repose in safety. It is a worthy object. It harms nobody; it helps everybody.

And as an aid to construction I implore the court to consider the sanctity of home. "The foxes have their holes and the birds of the air have their nests, but the son of man hath not where to lay his head," said the founder of our religion in alluding to the great sacrifices involved in his ministry.

> "The sea-fowl has gone to her nest,
> The beast has laid down in his lair;
> Even here is a season of rest,
> And I to my cabin repair."

Even the castaway in solitude, cut off from the pleasures of "society, friendship and love," separated from kindred and the sympathies of human society, in common with even the brute creation, finds yet a solace in retirement to his solitary home to enjoy his season of rest.

It was nothing less than to protect the most sacred of our institutions which the legislature did undertake. The question is whether the legislative will shall be defeated and their statutes practically abrogated because they said "convey" when a word of more general signification might have been employed to express their will.

Counsel then cited many rules of construction from 1 Bl. Com. "Rules of Interpretation;" 1 Kent's Com. (9th ed.) 517, 518 and cases cited; Sedgwick on Construction, &c. (2 ed.) 193, 195, 196, 197, 198, 200, 201, 221, 309, 310, 312, 359.

DANFORTH, J. This is a real action in which the plaintiff claims title by virtue of a levy upon an execution against the defendant. The defence is the insufficiency of the levy, the objections to which are embodied in the several requests for instructions which were refused.

The first is general in its terms and is not relied upon.

The second is founded upon the fact that land not belonging to the debtor is included in the levy and appraisal, thereby increasing the amount to be allowed on the execution and to be paid for redemption. But it diminishes the debt in the same proportion. The effect is the same as if the debtor's land was appraised too high, an error of which she could hardly be expected to complain. It is not however, a process for redemption. If it

were so and the error found injurious to the debtor, doubtless a remedy could be found. This same question was before the court in Massachusetts in *Atkins* v. *Bean*, 14 Mass. 404 and the levy sustained. That case was cited with approval in *Grover* v. *Howard*, 31 Maine, 549 and in *Rice* v. *Cook*, 75 Maine, 46, the doctrine is recognized as well settled law.

The third objection is, that as the title to a portion of the premises in question was derived by the defendant from her husband during coverture, such portion was not liable to be taken by levy in satisfaction of her debts.

It is claimed on behalf of the plaintiff, that the case shows no evidence upon which such an objection can rest. While on the other hand a motion is made in behalf of the defendant, alleging that at the trial such evidence was introduced, but omitted in making up the case and asking for a new trial that the omission may be supplied. We have no occasion to consider this motion ; for whatever the omission, that which is reported is plenary to establish the fact that the defendant's title came from her husband during coverture. The deed under which she claims is in the case and is the only evidence of her title. This is something more than the mere declaration of the grantor that at that time the grantee was his wife ; it is the act of both parties, the grantor in giving and the grantee in receiving, recognizing the relationship of husband and wife as an existing fact and qualifying the title accordingly. Certainly the deed, in the absence of any contradictory evidence taken in connection with other corroborative testimony in the case and especially with the fact that the ruling does not appear to have been founded upon any want of evidence in this respect, is sufficient proof of the coverture at its date.

Thus the question is directly presented, whether real estate conveyed by the husband to the wife can be attached and levied upon by a creditor to pay her debts. This depends upon the construction to be given to R. S., 1871, c. 61, § 1, under which this levy was made. The statute provides that a married woman may not only acquire property in her own right, but "may manage, sell, convey and devise the same by will, without the joinder or assent of her husband; but real estate, directly or

indirectly, conveyed to her by her husband, or paid for by him, or given or devised to her by his relatives, can not be conveyed *by her* without the joinder of her husband in such conveyance."

In this prohibition, did the legislature refer to such conveyances as were voluntary on the part of the wife, the result of contracts to which she should be a party, receiving their force and effect from her consent alone, or was it intended to go still further and exempt such real estate from attachment and levy in satisfaction of her debts? If we look at the language alone, we can have no hesitation in giving it the narrower limitation. Such at least is the ordinary use of the term conveyance; and besides, we find the conveyance prohibited, one to be made " by her," which can only be one in which she is the moving cause, one of the contracting parties; while a transfer by extent of an execution, is, on the part of the debtor, an involuntary, unwilling one.

It is, however, contended in the very able and elaborate argument in behalf of the defendant, that, in order to carry out the intention of the legislature, a broader meaning should be given to the word conveyance, a meaning which shall include a transfer by levy as well as by deed. In the argument, certain rules for the interpretation of statutes are clearly stated and fully sustained by the authorities cited. These rules we recognize as sound and binding, so far as they render aid in ascertaining the meaning of the legislature in the language used, which is the great and perhaps the only object to be sought.

The subject matter of the statute is the regulation of the rights and disabilities of a married woman in regard to her own property. Prior to 1856, her well established disabilities at common law had been abrogated, and she was left to her own discretion as to its disposition, including the right to convey. In that year a statute was passed, as said in *Call* v. *Perkins*, 65 Maine, 444, to meet a custom which had arisen where, "in numerous instances, the title of real estate of married men in embarrassed circumstances was transferred to their respective wives, and thence to third persons, thereby clogging the proof of fraudulent conveyances by this other remove from the original fraudulent grantor." This statute of 1856, c. 250, leaving the

power of the wife over her own property in its full force in all other respects, limits it only in the power of sale of that real estate which was derived directly or indirectly from the husband or his relatives. If the protection of the husband's creditors as above stated, is not the true purpose of this limitation, it would be difficult to say what is. It can not be that it was to preserve any rights which the husband might have, for after an absolute conveyance he has none. In the deed, such rights as he desired might be reserved to him without the aid of the law. If none is so reserved, the law gives the wife the entire control over it in every respect, except the power of sale, and even if it be a homestead, he can occupy only by her consent; and if the wife becomes " recusant, " the sanctity of the home is gone, with or without the sale. Hence the broader construction gives the husband no better protection than the narrower. We are not prepared to admit that under the latter interpretation, the wife could receive the price under an agreement with a purchaser, submit to a judgment for the amount, for the purpose of having the execution levied upon the land. Such a levy would be a conveyance under a contract resting upon the consent of the wife, as much a conveyance " by her " as though accomplished by deed.

But the section of the statute now under consideration, does not purport to act upon, or regulate the rights of the creditors of the wife. If it affects creditors at all, it is only those of the husband and for their protection. Other sections of the same chapter, and other chapters, regulate the rights of creditors. The wife is made competent to contract debts. She may in all cases be sued alone, and her property is made attachable the same as that of any other debtor, subject to the same exemptions and none other. The law carefully enumerates all that is exempt either by statute or common law. This enumeration, by a well known principle of construction, excludes all others. The land in question is not among the exemptions, but is, by clear and unquestioned law, made attachable. But it is said that the general law of attachment must be so construed as not to interfere with this prohibition. It is true that two inconsistent laws can

not stand together. One or the other must give way, and in some cases it may be a difficult question to decide which. But we are not to make them inconsistent except by necessity. No such necessity exists here. Giving the exception or prohibitory clause the full force required by its language and the purpose to be accomplished by the legislature, and there is no inconsistency. If we give it the broader construction, there is an inconsistency which no possible construction which can be given the attachment law, can reconcile.

It may seem somewhat of an anomaly that land which can not be sold by the debtor, which she can not voluntarily turn out in payment of her debt, may yet be taken in execution by the creditor, and yet it was so under the common law disability of the wife. *Moore* v. *Richardson*, 37 Maine, 438. In this case, the wife is under the disability of the common law only as to the conveyance of the land.

*Exceptions and motion overruled.*

PETERS, C. J., WALTON, LIBBEY, EMERY and FOSTER, JJ., concurred.